LIBERTY MUTUAL INSURANCE COMPANY v. SEARS, ROEBUCK AND COMPANY

APPELLATE SESSION OF THE SUPERIOR COURT

FILE NO. 710

Argued October 20, 1978—decided February 23, 1979

*Joseph T. Sweeney,* for the appellant (defendant).

*Janet Burlingame,* for the appellee (plaintiff).

Parskey, J. This action was brought to recover, by way of subrogation, for fire damage to real and personal property claimed to have been caused by a defective color television set sold to the plaintiff's insureds by the defendant. The action was brought in three counts, the first sounding in warranty, the second in strict tort liability and the third in negligence. The jury returned a verdict for the plaintiff on the first and second counts and, by direction of the court, for the defendant on the third count. The defendant has appealed from the judgment on the verdicts for the plaintiff. The only issue raised in this appeal is whether there was sufficient evidence from which the jury could infer that the television set was defective when it was sold to the plaintiff's insureds.

The plaintiff's insureds, Mr. and Mrs. Gregory Garnes, purchased from the defendant a new nineteen-inch portable color television set and

stand. For the first month of its use the set was located in the living room of the Garnes' home, where the Garnes' two children, ages nine and ten, had access to it and were permitted to turn it on and off, but were not permitted to change channels. Thereafter, the set was moved to the master bedroom where it was used by Mr. and Mrs. Garnes about once daily before retiring. The children were not permitted access to the set while it was in the master bedroom but, instead, used a set in the living room or in one of the children's bedrooms.

About six months after the set was purchased a fire occurred in the Garnes' apartment. Mrs. Garnes turned the set on in the early evening and twenty minutes later she smelled a peculiar odor which she traced to smoke coming from the master bedroom. Upon entering the bedroom she noticed flames emanating from the television set, and from no other place. The chief of the local fire department, after an investigation that eliminated other potential causes, pinpointed the television set as the cause of the fire.

From the time of its purchase to the time of the fire the television set worked well, except for a slight crackling noise noted by Mrs. Garnes whenever the set was turned on or off. During this six-month period the set received normal use in the Garnes' household. Except for the move from the living room to the master bedroom, the set was not disturbed. The plastic casing on the back of the set was never removed and nothing was kept on top of the set or in the stand beneath it. During those six months the set was never repaired, abused, or tampered with by family members, guests or any other person. As a result of the fire, the set was a mass of rubble by the time the fire fighters arrived on the scene.

Although the present action is based on strict tort liability and implied warranty, under either theory it is necessary for the plaintiff to establish that the product was defective at the time of sale. *Johnson v. Newell,* 160 Conn. 269, 273–74 (warranty); *Garthwait v. Burgio,* 153 Conn. 284, 289 (strict tort liability). We shall limit our discussion to the requirements of strict liability in tort. The rule which we apply is that of the Restatement (Second) of Torts. In order to recover the plaintiff must prove that (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury sought to be compensated; (4) the defect existed at the time of sale; and (5) the product was expected to and did reach the consumer without substantial change in condition. Restatement (Second), 2 Torts § 402A; see *Rossignol v. Danbury School of Aeronautics, Inc.,* 154 Conn. 549, 562.

Because it is undisputed that the defendant, Sears, Roebuck and Company, was engaged in the business of selling television sets and that the product reached the consumer, as expected, without substantial change in condition, we focus on the other elements of the claim.

### PROOF OF DEFECTIVE CONDITION

In the field of products liability the focus is on the product and not necessarily on its component parts. The plaintiff must prove that the product is unreasonably dangerous. To be considered unreasonably dangerous the product "must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Restatement (Second), 2

Torts § 402A, comment i. It is not necessary that the plaintiff in a strict tort action establish a specific defect so long as there is evidence of some unspecified dangerous condition. See *Lindsay* v. *McDonnell Douglas Aircraft Corporation,* 460 F.2d 631, 637 (8th Cir.); *Heaton* v. *Ford Motor Co.,* 248 Ore. 467, 472; 2 Dooley, Modern Tort Law § 32.49; 63 Am. Jur. 2d, Products Liability § 15. Whether a product is unreasonably dangerous is a question of fact to be determined by the jury. In determining this question the jury can draw their own conclusions as to the expectations of the ordinary consumer and the knowledge common in the community at large. *Slepski* v. *Williams Ford, Inc.,* 170 Conn. 18, 23. The jury may rely on circumstantial evidence to establish the dangerous condition of the product. *Lindsay* v. *McDonnell Douglas Aircraft Corporation,* supra; *Thomas* v. *American Cystoscope Makers, Inc.,* 414 F. Sup. 255, 261 (E.D. Pa.); *Franks* v. *National Dairy Products Corporation,* 282 F. Sup. 528, 531 (W.D. Tex.); *Anderson* v. *J. C. Penney Co.,* 149 Ind. App. 325, 332. In the absence of other identifiable causes, evidence of malfunction is sufficient evidence of a defect under § 402A. *Lindsay* v. *McDonnell Douglas Aircraft Corporation,* supra; *Greco* v. *Bucciconi Engineering Co.,* 283 F. Sup. 978, 984 (W.D. Pa.), aff'd, 407 F.2d 87 (3d Cir.); *Kuisis* v. *Baldwin-Lima-Hamilton Corporation,* 457 Pa. 321. The jury had before them the testimony of the fire chief, which not only zeroed in on the television set as the cause of the fire, but also eliminated any other cause. They also had the testimony of Mr. and Mrs. Garnes that the set was used normally over a period of six months. This evidence, together with the evidence that the set had in fact malfunctioned and the jury's knowledge from common experience that television sets, in normal use, do not self-ignite, was sufficient to establish that the television set in question was defective.

## CAUSATION

Where the existence of a defect is proved circumstantially by evidence of the manifestation of the defect, an attempt to isolate the elements of defects and causation will be academic, if not futile. In a real sense, the jury have found causation when they conclude that the malfunction is attributable to the defect. Similarly, having concluded that the circumstantial evidence offered was sufficient to support the finding of a defect, we conclude of necessity that the evidence supported a finding that the defect, although unspecified, was the cause of the fire and the resultant damage. See 2 Frumer and Friedman, Products Liability § 16A [4] [e] [ii] and cases there cited.

## RELATION BACK TO SALE

The mere fact that there is sufficient evidence to infer a defect does not necessarily mean that there is sufficient evidence to infer that the defect existed at the time of sale. Normally the questions of when and where a defect originated will be left to the jury. *Kuisis* v. *Baldwin-Lima-Hamilton Corporation*, 457 Pa. 321. Where the answers to these questions would be based only on speculation or conjecture, however, the answers cannot stand. *Smith* v. *Bell Telephone Co. of Pennsylvania*, 397 Pa. 134, 138.

The test for the sufficiency of evidence used to prove that a product was defective at the time of sale will be more difficult to meet where circumstantial, and not direct, evidence of the defect is produced. Where the jury are presented with sufficient direct evidence of a specific defect, either in design or in manufacture, the length of time between sale and injury may be of little consequence. See *Kleve* v. *General Motors Corporation*, 210 N.W.2d 568 (Iowa) (potential liability for manufacturer of

automobile even though injury occurred after automobile driven about 24,000 miles); *Tucker* v. *Unit Crane & Shovel Corporation,* 256 Ore. 318 (potential liability for manufacturer of crane even though injury occurred nine years after manufacture); annot., 54 A.L.R.3d 1079, 1091. Where the evidence of a defect is wholly circumstantial and consists of the malfunction itself, however, the likelihood that the defect existed at the time of sale is more speculative. This is so because where a specific defect in design or manufacture is proved, the jury are presented with evidence of the condition of the product before it left the manufacturer's or seller's hands. No such evidence is put forward when the defect is circumstantially proved from the fact of the malfunction. This lack of evidence of the existence of a specific defect, though not fatal to the plaintiff's case, does require that the evidential bridge linking the defect with the time of sale be more substantial than might otherwise be appropriate. Although the amount of time between purchase and injury is a significant factor in the inferential equation, it is not the only one. To it must be added other factors that might account for an alteration of the product after sale, including improper use, modification, tampering or improper maintenance. Annot., 54 A.L.R.3d 1079, 1092; 2 Frumer and Friedman, Products Liability § 16A [4] [e] [ii]. Taking these factors into consideration, we must look to the facts of each case to determine whether "reasonable and well balanced minds [could] be satisfied from the evidence adduced that the defective condition existed when the [product] was delivered." *Greco* v. *Bucciconi Engineering Co.,* 407 F.2d 87, 90 (3d Cir.). In the present case, the television set was purchased new only six months and five days before the injury. Mrs. Garnes testified that during that time it was not misused in any way, that it was not serviced, and that, while there were two minor chil-

dren in the household, it was never used without adult supervision. If there is sufficient evidence to conclude that reasonable care was exercised in the use of the product after its purchase, it is reasonable to infer that any defect in the product existed at the time of sale. *Stewart* v. *Budget Rent-A-Car Corporation,* 52 Hawaii 71. The television set is so commonplace in the American household and its characteristics are so commonly known that the six months which elapsed between the sale and the malfunction is not so great a time span as to require, on the part of the jury, a saltatorial intellectual achievement to bridge it.

There is no error.

In this opinion A. HEALEY and D. SHEA, Js., concurred.