## Coe-Park Donuts, Inc., et al. *v.* Robertshaw Controls Company et al.
### (2310)

Testo, Hull and Dupont, Js.

Argued October 13—decision released December 13, 1983

*John C. Bullock,* for the appellant (named defendant).

*Frederick P. Devine, Jr.,* for the appellants (defendant Care Service, Inc., et al.).

*Thomas L. Brayton,* with whom, on the brief, was *Terence D. Mariani,* for the appellees (plaintiffs).

Hull, J. This is a strict products liability action brought by the plaintiffs, Coe-Park Donuts, Inc. (Coe-Park), and its lessor, Easly Company Realty Equitable 1968 Corporation (Easly), against the manufacturer of a defective thermostat, Robertshaw Controls Company (Robertshaw), and the vendor of the instrument, Care Service, Inc. (Care). Coe-Park operated a doughnut shop and restaurant in which it owned and used a deep fat fryer.

At some point in time, the fryer failed to function properly, overheated and thereby caused an extensive emission of heavy smoke. As a result, Coe-Park purchased a thermostat from the defendant Care, an electrical appliance repair service and parts distributor. The thermostat had been manufactured by the defendant Robertshaw. The thermostat was similar to, and was intended to be a replacement for, the original thermostat. It was not installed by Care at that time, but was sold as a separate part. Two weeks later, however, the fryer was returned to Care, and Coe-Park requested that Care install the thermostat. After the thermostat was installed by Care, it was "checked okay" and the fryer was returned to the restaurant.

About five weeks after the change of thermostats, the deep fat fryer again overheated and smoked. A week later, the fryer smoked once again and, on this occasion, it continued to overheat to the point of ignition which was approximately 600°F. As a result of the fire, Coe-Park and Easly sued the manufacturer and the vendor of the thermostat. Coe-Park sued for damages sustained in restoring the premises to a usable condition and Easly sued for the loss of rent incurred while Coe-Park was out of business.

The trial court found that the plaintiffs had met their burden of proof as to all the necessary elements in a strict products liability claim. The court rendered judgment against both of the defendants, finding damages for Coe-Park in the amount of $6307.10 and for Easly in the amount of $10,643. This appeal[1] centers around the court's conclusion that a defect existed at the time of the sale and that the product was expected to and did reach the consumer without substantial change in condition.

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

On appeal, the defendants claim that the trial court erred when it "presumed" that the condition of the thermostat was the same when it reached the ultimate consumer as it was when it left the manufacturer. The defendants claim further that the court erred in failing to require the plaintiffs to produce evidence that would establish that the condition of the thermostat remained substantially unchanged from the time it left the manufacturer. In essence, the defendants assert that the trial court incorrectly placed the burden of proof on them, whereas it should have been the plaintiffs' burden of proof which, the defendants claim, was not met.

"In order to recover under the doctrine of strict liability in tort the plaintiff must prove that: (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition." *Giglio* v. *Connecticut Light & Power Co.,* 180 Conn. 230, 234, 429 A.2d 486 (1980); *Liberty Mutual Ins. Co.* v. *Sears, Roebuck & Co.,* 35 Conn. Sup. 687, 690, 406 A.2d 1254 (1979); 2 Restatement (Second), Torts § 402A.

The defendants concede that the plaintiffs satisfied their burden in regard to the first three prongs of this test, but claim that they failed to satisfy the fourth and fifth prongs. By conceding satisfaction of the second prong, the defendants do not contest that a defect in the thermostat caused the fire. The plaintiffs, on the other hand, concede that they have the burden of proof.[2] This is quite clear from the language cited above

---

[2] The plaintiffs argue, as an alternative, that there is authority for the proposition that the manufacturer has the burden of proof concerning the cause of a defect once the plaintiff establishes that a defect existed. The

which requires that the "plaintiff must prove" five elements in order to prevail in a strict tort liability claim.[3] See *Giglio* v. *Connecticut Light & Power Co.,* supra; *Liberty Mutual Ins. Co.* v. *Sears, Roebuck & Co.,* supra.

This appeal centers upon the trial court's use of the word "presume." The defendants claim that by presuming that a defect existed at the time the thermostat left the manufacturer, the court has shifted the burden of proof to the defendants and, therefore, committed reversible error. An examination of the record as a whole, however, reveals otherwise. See *Damora* v. *Christ-Janer,* 184 Conn. 109, 113, 441 A.2d 61 (1981).

The trial court did not indicate that the burden of proof was on, or shifted to, the defendants. In its memorandum of decision, the trial court reiterated the five prong test to be met in order to prevail upon a strict tort liability claim. The court stated and was, therefore,

---

majority of such cases, however, are easily distinguishable from the present case as they involve inherently dangerous products, foreign objects, multiple defendants whereby the plaintiff cannot reasonably specify which defendant was responsible, or where it is clear that the defendants have far greater access to such evidence. See *Hall* v. *E. I. Du Pont De Nemours & Co.,* 345 F. Sup. 353 (E.D.N.Y. 1972) (blasting caps); *Sindell* v. *Abbott Laboratories,* 26 Cal. 3d 588, 163 Cal. Rptr. 132, 607 P.2d 924 (1980) (numerous DES manufacturer defendants); *Anderson* v. *Somberg,* 67 N.J. 291, 338 A.2d 1, cert denied, 423 U.S. 929, 96 S. Ct. 279, 46 L. Ed. 2d 258 (1975) (defective surgical instrument injures unconscious plaintiff); *Santine* v. *Coca Cola Bottling Co.,* 591 P.2d 329 (Okla. App. 1978) (proof of foreign object in bottle raises presumption shifting burden to defendant).

[3] Volume 2 of the Restatement (Second), Torts § 402A, comment g states: "The burden of proof that the product was in a defective condition at the time that it left the hands of the particular seller is upon the injured plaintiff; and unless evidence can be produced which will support the conclusion that it was then defective, the burden is not sustained." Connecticut has adopted the principles of strict products liability promulgated by the American Law Institute as contained in 2 Restatement (Second) of Torts, § 402A. See *Rossignol* v. *Danbury School of Aeronautics, Inc.,* 154 Conn. 549, 559–60, 227 A.2d 418 (1967); *Garthwait* v. *Burgio,* 153 Conn. 284, 289, 216 A.2d 189 (1965).

well aware that the burden of proof was on the plaintiffs. The trial court's inappropriate choice of words does not amount to reversible error. The court stated that, in regard to the fourth and fifth prongs, "there is no evidence that the defect was caused by any external conditions after time of manufacture, and it is therefore reasonable to presume the condition of the thermostat was the same at the time of reaching the ultimate consumer as when it left the manufacturer." Read in context, therefore, it is clear that the trial court was not assuming or taking for granted facts for which there was no evidentiary support. Nor was the court positing that the defendants had the burden of proof. The statement indicates that after hearing all of the evidence, the court found that it was more likely than not or "reasonable" to find that there were no "external conditions" or substantial changes in the condition of the thermostat from the time it left the manufacturer to the time of the fire. It is clear from the record that the court had before it the testimony of a Coe-Park employee concerning the normal use of the deep fat fryer; the testimony of the plaintiffs' expert witness, who stated that there was no indication of any tampering such as tool marks on the thermostat and who theorized that the overheating was due to a slow leak in the instrument; and evidence that only forty-four to forty-eight days had elapsed between the time the thermostat was "checked okay" and the time of the fire.

It is "within the province of the jury to draw a reasonable and logical inference from the facts proved." *State v. Englehart,* 158 Conn. 117, 121, 256 A.2d 231 (1969). The court may infer that the defect in a product existed at the time of sale if there is sufficient evidence to support such an inference. *Liberty Mutual Ins. Co.* v. *Sears, Roebuck & Co.,* 35 Conn. Sup. 687, 692, 406 A.2d 1254 (1979). The standard of proof to be met is that it was more likely than not that the defect existed at the

time the product left the manufacturer. See 2 Frumer & Friedman, Products Liability § 16A [4] [e] [ii].

The court, being fully aware that the plaintiff had the burden of proof, found that the evidence was sufficient to permit an inference that the thermostat was defective at the time of sale. Although use of the word "infer" would have been more appropriate, the court's use of the word "presume" does not prejudice the defendants in any way when the word is read in the context of the entire memorandum of decision.

This appeal does not, however, turn entirely upon semantics. The evidence in the record clearly shows that it was reasonable for the court to conclude as it did. See *Appliances, Inc.* v. *Yost,* 186 Conn. 673, 676–77, 443 A.2d 486 (1982); *Grinold* v. *Grinold,* 172 Conn. 192, 194, 374 A.2d 172 (1976).

The court's choice of words did not, in any way, alter the path by which the court arrived at its conclusion that the plaintiffs had met their burden of proof. The defendants' claim, therefore, that the trial court erred by not requiring the plaintiffs to present evidence that the condition of the thermostat remained substantially unchanged from the time of sale to the time it failed is without merit. There is evidence in the record on this issue. We find, therefore, that the trial court's conclusion was not clearly erroneous. See Practice Book § 3060D; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

There is no error.

In this opinion the other judges concurred.