******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

EVELEIGH, J., with whom ESPINOSA, J., joins, dissenting. I respectfully dissent. I disagree with the majority opinion in all material respects. First, in my view, the plaintiff, Roland Todd White, pleaded sufficient facts to alert both the defendants, Mazda Motor of America, Inc. (Mazda), and Cartwright Auto, LLC (dealership), and the trier of fact to the potential invocation of the malfunction theory of products liability. Second, the procedural posture of this case does not lend itself to a resolution on the pleadings. This is not a motion to strike. Rather, in the context of a summary judgment motion, we consider all of the pleadings, affidavits and material submitted at summary judgment. Third, the issue was functionally preserved when the plaintiff cited two cases which held that expert testimony was not necessary in order to prove a design defect. Fourth, in my view, the issue was preserved when the trial judge ruled on the specific issue relating to the need to produce an expert in a design defect case. For these reasons, I respectfully dissent. Further, in view of my conclusion, unlike the majority opinion, it is necessary for me to discuss, in part II of this opinion, the applicability of the malfunction doctrine to this case.

In order to present the first argument, it is necessary to begin with a review of the legal principles governing product liability actions and the malfunction doctrine. In *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.*, 302 Conn. 123, 131, 25 A.3d 571 (2011), we recently explained these legal principles as follows: "To recover under the doctrine of strict liability in tort, a 'plaintiff must prove that: (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition.' . . . *Potter* v. *Chicago Pneumatic Tool Co.*, 241 Conn. 199, 214, 694 A.2d 1319 (1997); accord *Giglio* v. *Connecticut Light & Power Co.*, 180 Conn. 230, 234, 429 A.2d 486 (1980); see also 2 Restatement (Second), Torts § 402A, pp. 347–48 (1965). For a product to be 'unreasonably dangerous,' it 'must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.' . . . *Potter* v. *Chicago Pneumatic Tool Co.*, supra, 214–15, quoting 2 Restatement (Second), supra, § 402A, comment (i), p. 352."

"The absence of direct evidence of a specific product defect is not, however, fatal to a plaintiff's claims, and

a plaintiff, under certain circumstances, may establish a prima facie case using circumstantial evidence of a defect attributable to the manufacturer. See *Potter* v. *Chicago Pneumatic Tool Co.*, supra, 241 Conn. 218; *Giglio* v. *Connecticut Light & Power Co.*, supra, 180 Conn. 234–35; see also *Living & Learning Centre, Inc.* v. *Griese Custom Signs, Inc.*, 3 Conn. App. 661, 664, 491 A.2d 433 (1985) (permitting fact finder to infer defect from fact that malfunction occurred in absence of other possible causes); *Liberty Mutual Ins. Co.* v. *Sears, Roebuck & Co.*, [35 Conn. Supp. 687, 691, 406 A.2d 1254, cert. denied, 177 Conn. 754, 399 A.2d 526 (1979)] (same). In addition, a plaintiff need not present evidence to establish a specific defect, '[as] long as there is evidence of some unspecified dangerous condition.' *Liberty Mutual Ins. Co.* v. *Sears, Roebuck & Co.*, supra, 691.

"Although this court has not examined the precise contours of those circumstances in which this principle might apply, the Appellate and Superior Courts have used the 'malfunction theory' of products liability to permit a jury to infer the existence of a product defect that existed at the time of sale or distribution on the basis of circumstantial evidence alone. See *Potter* v. *Chicago Pneumatic Tool Co.*, supra, 241 Conn. 218 (citing cases from Appellate Court and Superior Court concluding that plaintiff may use fact of malfunction as evidence of defect when other potential causes are absent); see also *Living & Learning Centre, Inc.* v. *Griese Custom Signs, Inc.*, supra, 3 Conn. App. 664 (applying malfunction theory to permit inference of defect); *Fallon* v. *Matworks*, [50 Conn. Supp. 207, 215–16, 918 A.2d 1067 (2007)] (same); *O'Connor* v. *General Motors Corp.*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV 89-028104 (April 25, 1997) (21 Conn. L. Rptr. 151) (same); *Liberty Mutual Ins. Co.* v. *Sears, Roebuck & Co.*, supra, 35 Conn. Sup. 691 (same)." *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.*, supra, 302 Conn. 132–33.

"Most states have adopted some form of the malfunction theory. 1 L. Frumer & M. Friedman, Products Liability (2010) § 8.06 [3], pp. 8-262 through 8-270 and nn. 22–48 (collecting cases); D. Owen, 'Manufacturing Defects,' 53 S.C. L. Rev. 851, 874 n.128 (2002) (same). Although this theory does not relieve a plaintiff of the burden to prove all elements of a product liability claim; see 1 L. Frumer & M. Friedman, supra, § 8.06 [1], pp. 8-257 through 8-258; it does help to establish a prima facie product liability case by permitting the jury to infer the existence of a defect attributable to the manufacturer. According to § 3 of the Restatement (Third) of Torts, Products Liability, in a product liability action, the malfunction theory permits a jury to infer 'that the harm sustained by the plaintiff was caused by a product defect existing at the time of sale or distribution, without proof of a specific defect, when the incident that

harmed the plaintiff . . . was of a kind that ordinarily occurs as a result of product defect . . . and . . . was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution.' Restatement (Third), Torts, Products Liability § 3, p. 111 (1998). This theory is based on the same principles underlying the doctrine of res ipsa loquitur, which permits a fact finder to infer negligence from the circumstances of the incident, without resort to direct evidence of a specific wrongful act. Id., comment (a); see also id., reporters' note to comment (a), p. 115; 1 L. Frumer & M. Friedman, supra, § 8.06 [1], p. 8-258; J. Henderson & A. Twerski, 'The Products Liability Restatement in the Courts: An Initial Assessment,' 27 Wm. Mitchell L. Rev. 7, 22 (2000); cf. *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 575–76, 864 A.2d 1 (2005) ('[t]he doctrine of res ipsa loquitur, literally the thing speaks for itself, permits a jury to infer negligence when no direct evidence of negligence has been introduced' . . .). Indeed, when a relatively new product fails to perform its intended function, the fact that the product failed may be said to 'speak for itself' and provide support for an inference that the product was defective. J. Henderson & A. Twerski, supra, 22; see J. Hoffman, 'Res Ipsa Loquitur and Indeterminate Product Defects: If They Speak for Themselves, What Are They Saying?,' 36 S. Tex. L. Rev. 353, 355–57 (1995)." (Footnotes omitted.) *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.*, supra, 302 Conn. 133–35.

## I

## A

With this background in mind, I turn to the majority's opinion that the Appellate Court properly concluded that the plaintiff's claim regarding the malfunction doctrine was not properly raised at the trial court. I agree with the majority that " '[i]t is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court.' . . . *Burnham* v. *Karl & Gelb, P.C.*, 252 Conn. 153, 170–71, 745 A.2d 178 (2000); see also Practice Book § 60-5 ('[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial'). 'The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked.' . . . *State* v. *Colon*, 82 Conn. App. 658, 659, 847 A.2d 315, cert. denied, 269 Conn. 915, 852 A.2d 745 (2004); accord *Sgueglia* v. *Milne Construction Co.*, 212 Conn. 427, 432 n.5, 562 A.2d 505 (1989); see also *McKiernan* v. *Caldor, Inc.*, 183 Conn. 164, 166, 438 A.2d 865 (1981) (issue 'briefly suggested' in trial court is not distinctly raised). 'The reason for the rule is obvious: to permit a party

to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court . . . to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party.' . . . *State* v. *Dalzell*, 282 Conn. 709, 720, 924 A.2d 809 (2007)." (Emphasis in original.) *Remillard* v. *Remillard*, 297 Conn. 345, 351–52, 999 A.2d 713 (2010).

" 'These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. . . . Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush.' . . . *State* v. *Johnson*, 289 Conn. 437, [461], 958 A.2d 713 (2008); see also *Council* v. *Commissioner of Correction*, 286 Conn. 477, 498, 944 A.2d 340 (2008) ('[A] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one . . . . For this court to . . . consider [a] claim on the basis of a specific legal ground not raised during trial would amount to trial by ambuscade, unfair both to the [court] and to the opposing party.' . . .). Thus, because the sina qua non of preservation is fair notice to the trial court; see, e.g., *State* v. *Ross*, 269 Conn. 213, 335–36, 849 A.2d 648 (2004) ('the essence of the preservation requirement is that *fair notice* be given to the trial court of the party's view of the governing law' . . .); the determination of whether a claim has been properly preserved will depend on a careful review of the record to ascertain whether the claim on appeal was articulated below with sufficient clarity to place the trial court on reasonable notice of that very same claim." (Emphasis in original.) *State* v. *Jorge P.*, 308 Conn. 740, 753–54, 66 A.3d 869 (2013).

The majority states that "[t]o put the defendants on notice that the plaintiff intended to pursue an alternative theory of liability under the malfunction theory, the plaintiff needed to plead this theory in his amended complaint." I respectfully disagree with the majority's emphasis on the pleadings in the present case. I agree that the pleadings are one factor in the analysis. However, in a summary judgment motion, as opposed to a motion to strike, they do not represent the sine qua non. "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law . . . and the party

opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of the case. . . . Finally, the scope of our review of the trial court's decision to grant the plaintiff's motion for summary judgment is plenary." (Internal quotation marks omitted.) *DiPietro* v. *Farmington Sports Arena, LLC*, 306 Conn. 107, 116, 49 A.3d 951 (2012).

Assuming, arguendo, that the majority is correct that sufficient facts had to be pleaded, in my view, the complaint was sufficient. The complaint sets forth that the plaintiff bought a new 2007 Mazda3 automobile (vehicle) on October 16, 2006, and that, on November 15, 2006, the vehicle erupted in flames. The plaintiff further alleges that at all times the vehicle was used and employed by the plaintiff for the purpose for which it had been designed, produced, manufactured and sold. The plaintiff further alleges that there was a defect in the vehicle and that it was not merchantable for the purpose for which it was sold. The fact that a fire does not ordinarily occur in a vehicle less than one month old is a matter of common knowledge for a jury to find when considering the doctrine. Further, the allegations to the effect that the product was used for the manner intended and that there was a defect when sold are sufficient, in my view, to establish that there were no other causes which started the fire. Therefore, I would conclude that the allegations contained within the complaint are sufficient to invoke the doctrine. Cf. *Malvicini* v. *Stratfield Motor Hotel, Inc.*, 206 Conn. 439, 444, 538 A.2d 690 (1988) ("as a matter of common experience, it can be said that a shower does not ordinarily turn suddenly hot in the absence of negligence").

Further, in the present case, a review of both the pleadings and the transcripts of the trial court arguments reveal that the plaintiff sufficiently raised a claim under the malfunction doctrine at the trial court. The pleadings and documents establish that: (1) the plaintiff purchased the vehicle when it was still new; (2) the vehicle had 2800 miles on it at the time of the accident; (3) the plaintiff had no problems with the vehicle prior to the accident; (4) the plaintiff only drove the vehicle to and from work; (5) the plaintiff owned the vehicle less than one month prior to the accident; (6) neither the plaintiff nor anyone else ever opened the hood prior to the accident; (7) the plaintiff alleged a product liability defect; and (8) the defendants breached the statutory duty of merchantability.

This evidence certainly suffices to establish a malfunction doctrine claim. The harm ordinarily occurs as a result of a product defect and was not solely the result of causes other than product defect existing at the time of sale or distribution. The doctrine is one of inference. Restatement (Third), supra, § 3. That inference should

come from the fact finder. It is not appropriate to make negative inferences, at the level of a motion for summary judgment, when all of the evidence has not been presented. This case is not before us on a motion to strike. We consider all of the pleadings, affidavits and documents presented to the court at this stage and we are viewing this evidence in a light most favorable to the nonmoving party. In addition, in the amended complaint, the plaintiff alleged, inter alia, the following: (1) "[Mazda] negligently failed to design [the vehicle] and its component parts in such a manner so that the [vehicle] would not be a hazard to a consumer who purchased the [vehicle]"; (2) "[Mazda] negligently failed to test and/or inspect [the vehicle] and its component parts, thereby causing [the vehicle] to be hazardous to persons such as the plaintiff"; (3) "[Mazda] manufactured and/or sold [the vehicle] with defective component parts and/or engine thereby causing a hazard to users"; (4) "[Mazda] failed to warn the plaintiff of the aforesaid conditions"; (5) "[Mazda] breached its statutory warranty of merchantability in that [the vehicle] was not fit for the ordinary purposes for which it was sold"; and (6) "[Mazda] sold [the vehicle] in the aforesaid defective, unsafe and dangerous condition, thereby subjecting the plaintiff to an unreasonable risk of injury." The plaintiff repeated these same allegations against the dealership. These allegations in the plaintiff's complaint do not raise claims related to a specific defect, but raise claims that could be proven by the malfunction doctrine.

B

The majority states that "even if we suspend our pleading rules for the sake of argument, a review of the plaintiff's memorandum in opposition to the defendants' summary judgment motion reveals that he did not raise a claim of an unspecified defect under the malfunction theory and, again, did not even address its elements." I respectfully disagree. A review of the plaintiff's objection to the defendants' motion for summary judgment and the accompanying memorandum of law also demonstrates, in my view, that the plaintiff sufficiently raised the malfunction doctrine. First, in his objection, the plaintiff asserted that "[t]he plaintiff has provided sufficient evidence that the vehicle at issue harbored a defective design and/or improper installation of automotive parts that ultimately caused a car fire, and, subsequently, the plaintiff's injuries. Therefore, the plaintiff has set forth a prima facie case for his claim under [the Connecticut Product Liability Act, General Statutes § 52-572m et seq. (act)]." Second, in his memorandum of law in support of his objection, the plaintiff further explained as follows: "Even assuming arguendo [Richard E.] Morris [a fire investigator] does not qualify as an expert witness, there still exists a genuine issue of material fact as to whether the defective condition of the vehicle was the proximate cause

of the plaintiff's harm. . . . While causation can be proven by circumstantial evidence or expert testimony, the jury is free to accept or reject each expert's opinion in whole or in part. *Birgel* v. *Heintz*, 163 Conn. 23, 30, 301 A.2d 249 (1972). The plaintiff has provided eyewitness testimony at his deposition as to the events surrounding the fire and his actions immediately leading up to said fire. It is the proper role of the jury to make a factual determination by weighing any potentially conflicting testimony from the plaintiff against that of an expert witness for the defendants." (Citation omitted; internal quotation marks omitted.) The plaintiff then went on to cite *Lewis* v. *North American Philips Corp.*, Superior Court, judicial district of New Haven, Docket No. CV-91-0315792-S (April 6, 1994). The plaintiff explained as follows: "In *Lewis*, the [Superior Court] denied the defendant's motion for summary judgment for precisely this reason, as conflicting testimony between the plaintiff and the defendant's multiple experts created a genuine issue of material fact as to whether an alleged defective television set which caught fire was the proximate cause of the plaintiff's harm." At the oral argument on the motion for summary judgment, the plaintiff also asserted that the plaintiff's own eyewitness testimony was sufficient to support his claim.

The majority argues that the plaintiff only referenced proximate cause in this argument. However, the plaintiff also argued, accompanied by a citation to *Potter* v. *Chicago Pneumatic Tool Co.*, supra, 241 Conn. 219, that: "The plaintiff is required to provide some form of evidence, *including* expert testimony, to quantify the precise product defect." (Emphasis added.) I would conclude that the term "including" is being used by the plaintiff as a term of enlargement, indicating one of the forms of evidence that may be used, not as a term of limitation. See *Hartford Electric Light Co.* v. *Sullivan*, 161 Conn. 145, 149–53, 285 A.2d 352 (1971) (The court concluded that, after consulting the legislative history, the term "include" is a term of limitation as used in General Statutes § 12-264, but recognized that, although "[w]e have found . . . that 'include' is primarily defined as a term of limitation," certain "legal dictionaries also . . . indicat[e] that 'including' can be a term of enlargement. See [Black's] Law Dictionary [4th Ed. 1968]; [Bouvier's] Law Dictionary [1934 Rev.]; [Ballentine's] Law Dictionary [3d Ed. 1969]."). As Chief Justice Rogers, joined by Justice Palmer, emphasized in their concurrence in *State* v. *Rodriguez-Roman*, 297 Conn. 66, 101, 3 A.3d 783 (2010), the word " 'including' " may reasonably be "read to 'express an enlargement' or to 'specify a particular thing already included within the general words' . . . . This interpretation is compelled by the grammar and structure of the statute and is bolstered by the most recent edition of Black's Law Dictionary, which defines 'include' as: 'To contain as a

part of something." (Citations omitted.)

The plaintiff also cited *Lewis* v. *North American Philips Corp.*, supra, Superior Court, Docket No. CV-91-0315792-S, as part of the same section of his brief. In *Lewis*, the plaintiff purchased a new television set on March 29, 1989, and, on June 5, 1989, that television set caught fire. The plaintiff in that case observed only the television set burning at the start of the fire and that the initial smoke was dark black. In its discussion, relating to product defect, the court in *Lewis* opined that "[i]n deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . [The] plaintiff . . . claims that he saw only the television set burning at the start of the fire and that the initial smoke was black indicating burning plastic. Moreover, the television set, which the fire destroyed, was the only appliance energized at the time of the fire. Furthermore, common knowledge is that television sets, in normal use, do not self-ignite . . . . Thus a genuine issue of material fact exists as to whether the television set was defective." (Citations omitted; internal quotation marks omitted.) Id. *Lewis* is an example of a classic malfunction doctrine case. The product is new, the fire is something that would not ordinarily happen in a new product, and it is within a juror's common knowledge that a fire would not ordinarily happen.

The citation to *Lewis* and *Potter* should have alerted the trial court to the fact that an expert was not required in the case. I further note that, in *Lewis*, although the plaintiff had one expert and the defendant had two experts, the court only discussed the experts' relationship to the issue of proximate cause.

In consideration of the preservation issue in this case, I must clarify the issue that must have been preserved, namely, whether an expert was required to prove a design defect on a car that caught fire within the first 2800 miles of operation. This question necessarily implicates the malfunction doctrine. The trial court granted summary judgment on the basis that an expert was required.

The defendants certainly had fair notice. A review of the reply brief in support of the summary judgment motion demonstrates that the defendants were aware of the plaintiff's claim regarding the malfunction doctrine. The defendants stated as follows: "[The] [p]laintiff's reliance on [*Lewis*] is also misplaced for two reasons. . . . First, there was no dispute that the plaintiff in that case had provided competent expert testimony concerning whether the product was defective. Instead, the court refused to resolve a factual dispute between three competent experts concerning the cause of [the] fire. This case, on the other hand, involves the absence of requisite proof because the plaintiff has failed to adduce any expert testimony concerning whether the vehicle's

fuel system was defective. Unlike in *Lewis*, this court is not required, at the summary judgment stage, to make any factual determinations reserved for the fact finder because [the] plaintiff has failed to present any competent evidence on this issue.

"Second, *Lewis* is distinguishable on the grounds that all of the competent experts agreed that it was impossible to determine the cause of the fire and that, instead, there was an unspecified dangerous condition. Here, to the contrary, [the] plaintiff has advanced a very specific theory concerning how the vehicle's fuel system was defective, but has failed to present essential expert evidence to support that theory." (Citation omitted; emphasis omitted.)

The foregoing demonstrates that the defendants knew about *Lewis* and that it involved the malfunction doctrine. As indicated previously in this opinion, I disagree with the defendants' interpretation of *Lewis* in that the court did not discuss the experts until it considered proximate cause. Rather, it discussed the plaintiff's observation of the fire. The defense counsel's concession during oral argument in the present case that the only way circumstantial evidence would prove a defect was through the malfunction doctrine also belies any lack of knowledge.

The trial judge also had fair notice. Both the statements in the briefs previously referenced, and the citations to *Potter* and *Lewis* should have alerted the trial court to the issue.

C

We have previously held that the citation to relevant authority is one factor to be considered in a determination of the preservation issue. Thus, in *Fadner* v. *Commissioner of Revenue Services*, 281 Conn. 719, 729 n.12, 917 A.2d 540 (2007), we stated: "The plaintiffs did not specifically refer to the doctrine of equitable recoupment before the trial court or in the tax appeal proceeding. Although we are not 'bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial'; Practice Book § 60-5; we have in the past addressed issues that were 'functionally,' albeit not specifically, raised by parties in trial court proceedings. See *Salmon* v. *Dept. of Public Health & Addiction Services*, 259 Conn. 288, 305, 788 A.2d 1199 (2002) ('[w]e are persuaded that the plaintiff functionally raised this issue in the administrative and trial court proceedings'); *State* v. *Dabkowski*, 199 Conn. 193, 198, 506 A.2d 118 (1986) (although '[t]he formulation of these positions, as now made on appeal, were not articulated in that manner in the trial court . . . [t]he claims were functionally made').

"The plaintiffs have consistently requested equitable relief in the form of being permitted to file amended returns for the years 1989 and 1990, despite the passage

of the statute of limitations, so that they may receive a refund or offset the deficiency now assessed by the defendant. In addition, the plaintiffs' continued references to *Federal Deposit Ins. Corp.* v. *Crystal*, 251 Conn. 748, 760–61, 741 A.2d 956 (1999), wherein a taxpayer was precluded from obtaining a refund, but was permitted to recover overpaid taxes via a credit against deficiency assessments that it had paid under protest, indicates that the concept of recoupment, if not the exact terminology, was raised before the trial court. We, therefore, conclude that the plaintiffs' claim for equitable recoupment was raised at least functionally in the trial court proceedings, so that it is preserved for our consideration in this appeal."

As I explain in this opinion, the malfunction doctrine allows the plaintiff to prove his case without the benefit of an expert. The plaintiff explained this issue to the court by his reference to both *Potter* and *Lewis*, statements in his briefs to the court and his argument to the court that: "First of all, opposing counsel misstates the law in [*Potter*]. I would refer you to . . . their own complaint—their motion for summary judgment, which was filed December 1, 2010, which says, [the] plaintiff must provide the jury with some evidence, including expert testimony. It does not specifically say only expert testimony. So I would point you specifically to that case, which is binding on our case, of course. It's a Connecticut Supreme Court case. . . .

"Furthermore, even if [Morris] is somehow not deemed as an expert by this court, there is case law, [*Lewis*], which is a Connecticut Superior Court case from 1994, which specifically held that the plaintiff, who had witnessed a TV which had exploded, that that testimony alone was enough . . . to go to the trier of fact, to a jury, to support that claim, versus expert testimony by the defense contesting that, specifically that the eyewitness himself, who was clearly not an expert in television manufacture, was just a consumer of the product, he's watching TV at home, that, in and of itself, was enough to defeat a motion for summary judgment with conflicting defendant's expert testimony."

The plaintiff's counsel, clearly argued to the trial court that he does not need an expert for the jury to consider the case. He discusses both *Potter* and *Lewis* to support his contention. The issue was clearly presented to the trial court.

Although the plaintiff did not use the term "malfunction doctrine" in his objection to the motion for summary judgment, the plaintiff did claim that circumstantial evidence was sufficient to prove the plaintiff's case, which is the benchmark of the malfunction doctrine. Indeed, "[a]s a general rule, the lack of direct evidence of a manufacturing defect is not fatal to a plaintiff's case, and circumstantial evidence is

admissible to prove and may be sufficient proof that a product had a manufacturing defect when it left the manufacturer's hands, with or without expert opinion testimony." (Footnotes omitted.) 2A American Law of Products Liability (3d Ed. 2008) § 31:21, p. 29–30. Moreover, the plaintiff also claimed that the eyewitness testimony of the plaintiff would have been sufficient to prove the plaintiff's case. It is well established that "[t]he user's testimony of the circumstances of the accident is a generally accepted method of proving a manufacturing defect." Id., § 31:24, p. 33.

Indeed, it is important to note that in their reply to the plaintiff's objection to the motion for summary judgment, the defendants acknowledged that the plaintiff claimed that expert testimony was not required to prove his claim and the defendants responded to that argument. Also, at the oral argument on the motion for summary judgment, the defendants' counsel again recognized that the plaintiff was making a claim and citing cases "when there's an unspecified problem with the vehicle."[1]

The plaintiff also raised the malfunction doctrine in his motion for reargument and request for oral argument. Indeed, the plaintiff cited *Potter* v. *Chicago Pneumatic Tool Co.*, supra, 241 Conn. 218, for the proposition that "Connecticut courts . . . have consistently stated that a jury may, under appropriate circumstances, infer a defect from the evidence without the necessity of expert testimony." The plaintiff further explained that "the case at bar involves a new [v]ehicle that self-ignited within a few months of its purchase. As previously noted by multiple Connecticut courts, it is common knowledge that 'television sets in normal use, do not self-ignite . . . .' *Lewis* v. *North American Philips Corp.*, [supra, Superior Court, Docket No. CV-91-0315792-S] . . . ." (Citation omitted.) It is important to note the language in *Potter* in view of the majority's position that the issue was not raised to the trial court or the defendants. *Potter* held that "Connecticut courts, however, have consistently stated that a jury may, under appropriate circumstances, infer a defect from the evidence without the necessity of expert testimony. See, e.g., *Standard Structural Steel Co.* v. *Bethlehem Steel Corp.*, 597 F. Sup. 164, 183 (D. Conn. 1984) (recognizing Connecticut law permits fact finder to draw inference of defect from circumstantial evidence); *Living & Learning Centre, Inc.* v. *Griese Custom Signs, Inc.*, [supra, 3 Conn. App. 664] (It is not necessary that the plaintiff in a strict tort action establish a specific defect as long as there is evidence of some unspecified dangerous condition. In the absence of other identifiable causes, evidence of malfunction is sufficient evidence of a defect under § 402A of the Second Restatement of Torts.); *Kileen* v. *General Motors Corp.*, 36 Conn. Sup. 347, 349, 421 A.2d 874 (1980) ([t]he fact finder can find, where other identifiable causes are absent, that the

mere evidence of a malfunction is sufficient evidence of a defect); see also annot., 65 A.L.R.4th 346, 354–58 (1988) (listing twenty-eight states that allow establishment of prima facie case of design defect based upon inferences from circumstantial evidence).

"Moreover, in some instances, a product may be in a defective condition unreasonably dangerous to the user even though no feasible alternative design is available. In such instances, the manufacturer may be strictly liable for a design defect notwithstanding the fact that there are no safer alternative designs in existence. See, e.g., *O'Brien* v. *Muskin Corp.*, 94 N.J. 169, 184, 463 A.2d 298 (1983) (other products, including some for which no alternative exists, are so dangerous and of such little use that . . . a manufacturer would bear the cost of liability of harm to others); *Wilson* v. *Piper Aircraft Corp.*, 282 Or. 61, 71 n.5, 577 P.2d 1322 (1978) (Our holding should not be interpreted as a requirement that [the practicability of a safer alternative design] must in all cases weigh in [the] plaintiff's favor before the case can be submitted to the jury. There might be cases in which the jury would be permitted to hold the defendant liable on account of a dangerous design feature even though no safer design was feasible [or there was no evidence of a safer practicable alternative].); *Sumnicht* v. *Toyota Motor Sales, U.S.A., Inc.*, 121 Wis. 2d 338, 371, 360 N.W.2d 2 (1984) ([a] product may be defective and unreasonably dangerous even though there are no alternative, safer designs available). Accordingly, we decline to adopt the requirement that a plaintiff must prove a feasible alternative design as a sine qua non to establishing a prima facie case of design defect.

"Although today we continue to adhere to our long-standing rule that a product's defectiveness is to be determined by the expectations of an ordinary consumer, we nevertheless recognize that there may be instances involving complex product designs in which an ordinary consumer may not be able to form expectations of safety. See 1 M. Madden, [Products Liability (2d Ed. 1988)] § 6.7, p. 209 (noting difficulty in determining in particular instances the reasonable expectation of the consumer); W. Prosser & W. Keeton, [Torts (5th Ed. 1984)] § 99, pp. 698–99 (discussing ambiguity of consumer expectation test and shortcomings in its application). In such cases, a consumer's expectations may be viewed in light of various factors that balance the utility of the product's design with the magnitude of its risks. We find persuasive the reasoning of those jurisdictions that have modified their formulation of the consumer expectation test by incorporating risk-utility factors into the ordinary consumer expectation analysis. See, e.g., *Reed* v. *Tiffin Motor Homes, Inc.*, 697 F.2d 1192, 1196–97 (4th Cir. 1982) (applying South Carolina law); *Koske* v. *Townsend Engineering Co.*, 551 N.E.2d 437, 440–41 (Ind. 1990); *Aller* v. *Rodgers Machinery Mfg. Co.*, 268 N.W.2d 830, 835 (Iowa 1978);

*Jenkins* v. *Amchem Products, Inc.*, 256 Kan. 602, 636, 886 P.2d 869 (1994), cert. denied, 516 U.S. 820, 116 S. Ct. 80, 133 L. Ed. 2d 38 (1995); *Seattle-First National Bank* v. *Tabert*, 86 Wash. 2d 145, 154, 542 P.2d 774 (1975). Thus, the modified consumer expectation test provides the jury with the product's risks and utility and then inquires whether a reasonable consumer would consider the product unreasonably dangerous. As the Supreme Court of Washington stated in *Seattle-First National Bank* v. *Tabert*, supra, 154, [i]n determining the reasonable expectations of the ordinary consumer, a number of factors must be considered. The relative cost of the product, the gravity of the potential harm from the claimed defect and the cost and feasibility of eliminating or minimizing the risk may be relevant in a particular case. In other instances the nature of the product or the nature of the claimed defect may make other factors relevant to the issue. Accordingly, under this modified formulation, the consumer expectation test would establish the product's risks and utility, and the inquiry would then be whether a reasonable consumer would consider the product design unreasonably dangerous.

"In our view, the relevant factors that a jury *may* consider include, but are not limited to, the usefulness of the product, the likelihood and severity of the danger posed by the design, the feasibility of an alternative design, the financial cost of an improved design, the ability to reduce the product's danger without impairing its usefulness or making it too expensive, and the feasibility of spreading the loss by increasing the product's price. See *Barker* v. *Lull Engineering Co.*, [20 Cal. 3d 413, 431, 573 P.2d 443, 143 Cal. Rptr. 225 (1978)]; *Banks* v. *ICI Americas, Inc.*, 264 Ga. 732, 736 n.6, 450 S.E.2d 671 (1994); J. Wade, 'On the Nature of Strict Tort Liability for Products,' 44 Miss. L.J. 825, 837–38 (1973). The availability of a feasible alternative design is a factor that the plaintiff may, rather than must, prove in order to establish that a product's risks outweigh its utility. See, e.g., *French* v. *Grove Mfg. Co.*, 656 F.2d 295, 297 (8th Cir. 1981); *Armentrout* v. *FMC Corp.*, [842 P.2d 175, 185 (Colo. 1992)]; *Sumnicht* v. *Toyota Motor Sales, U.S.A., Inc.*, supra, 121 Wis. 2d 371.

"Furthermore, we emphasize that our adoption of a risk-utility balancing component to our consumer expectation test does not signal a retreat from strict tort liability. In weighing a product's risks against its utility, the focus of the jury should be on the product itself, and not on the conduct of the manufacturer. See *Dart* v. *Wiebe Mfg., Inc.*, 147 Ariz. 242, 246, 709 P.2d 876 (1985); *Aller* v. *Rodgers Machinery Mfg. Co.*, supra, 268 N.W.2d 835.

"Although today we adopt a modified formulation of the consumer expectation test, we emphasize that we do not require a plaintiff to present evidence relating

to the product's risks and utility in every case. As the California Court of Appeals has stated: There are certain kinds of accidents—even where fairly complex machinery is involved—[that] are so bizarre that the average juror, upon hearing the particulars, might reasonably think: Whatever the user may have expected from that contraption, it certainly wasn't that. *Akers* v. *Kelley Co.*, 173 Cal. App. 3d 633, 651, 219 Cal. Rptr. 513 (1985). Accordingly, the ordinary consumer expectation test is appropriate when the everyday experience of the particular product's users permits the inference that the product did not meet minimum safety expectations. See *Soule* v. *General Motors Corp.*, 8 Cal. 4th 548, 567, 882 P.2d 298, 34 Cal. Rptr. 2d 607 (1994).

"Conversely, the jury should engage in the risk-utility balancing required by our modified consumer expectation test when the particular facts do not reasonably permit the inference that the product did not meet the safety expectations of the ordinary consumer. See id., 568. Furthermore, instructions based on the ordinary consumer expectation test would not be appropriate when, as a matter of law, there is insufficient evidence to support a jury verdict under that test. See id. In such circumstances, the jury should be instructed solely on the modified consumer expectation test we have articulated today.

"In this respect, it is the function of the trial court to determine whether an instruction based on the ordinary consumer expectation test or the modified consumer expectation test, or both, is appropriate in light of the evidence presented. In making this determination, the trial court must ascertain whether, under each test, there is sufficient evidence as a matter of law to warrant the respective instruction. See *Wassell* v. *Hamblin*, 196 Conn. 463, 470–71, 493 A.2d 870 (1985) (trial court may not instruct jury on issue that is unsupported by evidence)." (Emphasis in original; footnotes omitted; internal quotation marks omitted.) *Potter* v. *Chicago Pneumatic Tool Co.*, supra, 241 Conn. 218–23. Indeed, in the present case, in my view, a reasonable consumer would not expect a new vehicle, less than one month old, to ignite a fire. As stated in *Ackers* v. *Kelley Co.*, supra, 173 Cal. App. 3d 651, "[w]hatever the user may have expected from that contraption, it certainly wasn't that." (Internal quotation marks omitted.)

On the basis of this review of the pleadings, affidavits, and arguments of counsel, I would conclude that, although the plaintiff did not use the magic words "malfunction doctrine," his assertion that: (1) he could prove his claim through circumstantial and eyewitness evidence; (2) he did not need to prove a specific defect; and (3) his citation to relevant case law in his opposition to the defendants' motion for summary judgment, articulated his claim under the malfunction doctrine with "sufficient clarity to place the trial court on reasonable

notice . . . ."[2] *State* v. *Jorge P.*, supra, 308 Conn. 754. Accordingly, I would conclude that the Appellate Court improperly concluded that the plaintiff failed to raise his claim under the malfunction doctrine at the trial court.[3]

Assuming, arguendo, the majority is correct that the issue was not preserved by the parties, in my view, it was preserved by the decision of the trial court. We have consistently held that when a trial court has based its decision in part on a claim, we may give the issue full consideration. In *Society for Savings* v. *Chestnut Estates, Inc.*, 176 Conn. 563, 568 n.2, 409 A.2d 1020 (1979), this court concluded as follows: "While the plaintiff did not raise the issue of waiver in the trial court and thus cannot pursue it on appeal . . . the trial court has based its decision in part on that ground. We may therefore give the issue full consideration . . . including the analysis offered by the plaintiff." (Citations omitted.) Therefore, since the trial court in the present case considered whether an expert was required to prove the plaintiff's claim, and based its decision on the failure of the plaintiff to produce an expert in this case, in my view, we may consider the plaintiff's claim on appeal that an expert is not required in a case of this nature. I further disagree with the trial court's phrase that "[w]ithout this expert testimony, a jury would be unable to determine whether the allegedly defective condition of the vehicle was the proximate cause of the plaintiff's harm. Therefore, due to the plaintiff's failure to produce expert testimony concerning the allegedly defective design or manufacture of the vehicle, the court finds that the defendant[s] [have] carried [their] burden of showing that the record reveals no genuine issue of material fact as to the plaintiff's liability claim." It is clear that a design defect could have been proven, in the absence of expert testimony, through the malfunction doctrine. Both *Potter* and *Lewis* make this position abundantly clear. *Potter*, which was cited to the trial court, states: "Connecticut courts, however, have consistently stated that a jury may, under appropriate circumstances, infer a defect from the evidence without the necessity of expert testimony." *Potter* v. *Chicago Pneumatic Tool Co.*, supra, 241 Conn. 218. This court also noted an annotation in, 65 A.L.R.4th, supra, 354–58, that "list[s] twenty-eight states that allow establishment of [a] prima facie case of design defect based upon inferences from circumstantial evidence." *Potter* v. *Chicago Pneumatic Tool Co.*, supra, 218. In my view, the trial court's opinion is not only a strong indication that the trial court considered this issue, but also a strong indication that the opinion was not correct as a matter of law. In my view, the trial court should have been alerted to the issue by the citation, on numerous occasions, to *Potter*. In this aspect, the case is remarkably similar to *Fadner* wherein we held that the plaintiff's claim for equitable relief, along with the citation to *Federal Deposit Ins.*

*Corp.*, was sufficient for preservation purposes. *Fadner* v. *Commissioner of Revenue Services*, supra, 281 Conn. 729 n.12. In the present case the plaintiff's claim that a defect in the vehicle caused his injuries, together with the citation to *Potter* and *Lewis*, should have been sufficient for preservation purposes.

Further, the trial court's phrase "[w]ithout this expert testimony, a jury would be unable to determine whether the allegedly defective condition of the vehicle was the proximate cause of the plaintiff's harm" is erroneous. It is certainly clear from the expert's testimony that he would have been qualified to testify as to the cause of the fire. In fact, he attributed the cause to a defective clamp on the fuel line. Although the court disavowed his qualifications as an expert on automobile design, he was certainly an expert regarding the cause of the fires and could have testified to the cause at trial.

I raise one more point in this regard. We require the trial courts to determine the qualification of experts, when the qualifications are questioned, through an evidentiary hearing. In my view, the exclusion of any expert testimony, without such a hearing, is ill-advised. For instance, there may be an overlap developed during testimony between the expert for proximate cause and the expert for a defect. A fire investigator, who has determined the cause of fire in numerous cases, may certainly be qualified to testify to the cause of a fire. However, if he had been either a fire marshal or an expert in fire investigation his expertise may extend to code requirements which may, in turn, extend to certain defects. For example, a fire expert may testify that the result of a fire was faulty wiring which caused a spark, a defect in a fireplace or installation which allowed ambers to ignite, or inadequate ventilation in a gas stove, causing ignition. All of these may overlap the areas of defect and causation. I emphasize that the design claim in the present case related only to paragraph (d) of the amended complaint. Paragraphs (a) and (b) described the nature of the defect. Paragraph (c) stated that the fuel lines were negligently installed. Paragraph (e) stated that the defendants failed to test or inspect the vehicle properly. Paragraph (g) alleged a failure to warn. I would not have discounted the expert's testimony, in toto, without the benefit of an evidentiary hearing. The fact that a summary judgment motion is pending should not serve as an excuse to moderate our rules regarding the qualification of expert testimony.

In my view, the issue of the need for expert testimony in a design defect was clearly decided by the trial court. We should, therefore, consider the issue on appeal.

II

Having concluded that the plaintiff raised his claim under the malfunction doctrine at the trial court, I must now consider the plaintiff's claim that the Appellate

Court improperly affirmed the trial court's award of summary judgment in favor of the defendants. On appeal, the plaintiff claims that, under the malfunction doctrine, he presented a prima facie case of product liability under the act. Specifically, the plaintiff asserts that, through circumstantial evidence and eyewitness testimony, he established a prima facie case that the fire in his new vehicle resulted from a product defect. In response, the defendants assert that, even if the plaintiff preserved his claim under the malfunction doctrine, that doctrine does not apply to the plaintiff's product liability claim in the present case. Specifically, the defendants claim that the malfunction doctrine does not apply because evidence was available to show the presence or absence of a specific defect. The defendants further claim that the plaintiff's claim does not satisfy the elements of the malfunction doctrine established in *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.*, supra, 302 Conn. 140–41. I agree with the plaintiff.

I begin my analysis of the plaintiff's second claim by setting forth the applicable standard of review. " 'The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of the case. . . . Finally, the scope of our review of the trial court's decision to grant the plaintiff's motion for summary judgment is plenary.' . . . *DiPietro* v. *Farmington Sports Arena, LLC*, [supra, 306 Conn. 115–16]. 'Summary judgment may be granted where the claim is barred by the statute of limitations.' *Doty* v. *Mucci*, 238 Conn. 800, 806, 679 A.2d 945 (1996). Summary judgment is appropriate on statute of limitations grounds when the 'material facts concerning the statute of limitations [are] not in dispute . . . .' *Burns* v. *Hartford Hospital*, 192 Conn. 451, 452, 472 A.2d 1257 (1984)." *Romprey* v. *Safeco Ins. Co. of America*, 310 Conn. 304, 312–13, 77 A.3d 726 (2013).

As I explained previously in this opinion, this court has recently recognized that "[m]ost states have adopted some form of the malfunction theory. . . .

Although this theory does not relieve a plaintiff of the burden to prove all elements of a product liability claim . . . it does help to establish a prima facie product liability case by permitting the jury to infer the existence of a defect attributable to the manufacturer." (Citations omitted; footnotes omitted.) *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.*, supra, 302 Conn. 133–34. This court concluded that "when direct evidence of a specific defect is unavailable, a jury may rely on circumstantial evidence to infer that a product that malfunctioned was defective at the time it left the manufacturer's or seller's control if the plaintiff presents evidence establishing that (1) the incident that caused the plaintiff's harm was of a kind that ordinarily does not occur in the absence of a product defect, and (2) any defect most likely existed at the time the product left the manufacturer's or seller's control and was not the result of other reasonably possible causes not attributable to the manufacturer or seller. These two inferences, taken together, permit a trier of fact to link the plaintiff's injury to a product defect attributable to the manufacturer or seller. A plaintiff may establish these elements through the use of various forms of circumstantial evidence, including evidence of (1) the history and use of the particular product, (2) the manner in which the product malfunctioned, (3) similar malfunctions in similar products that may negate the possibility of other causes, (4) the age of the product in relation to its life expectancy, and (5) the most likely causes of the malfunction. If lay witnesses and common experience are not sufficient to remove the case from the realm of speculation, the plaintiff will need to present expert testimony to establish a prima facie case." (Footnotes omitted.) Id., 139–41.

The defendants assert, however, that the malfunction doctrine does not apply in this case because the plaintiff had access to evidence that could have demonstrated the existence of a specific defect. Specifically, the defendants claim that the plaintiff's vehicle was available for inspection and was inspected by the plaintiff's expert and the plaintiff's expert was able to examine an exemplar vehicle. I disagree.

It is important to note that in *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.*, supra, 302 Conn. 132 n.4, this court explained that "[w]hether a plaintiff in this state may use the malfunction theory when the product is still available for inspection but the plaintiff nevertheless is unable to produce direct evidence of a specific defect is a question that we need not resolve in this appeal." Accordingly, whether the ability to examine the plaintiff's vehicle or an exemplar in the present case prohibits the plaintiff from making a claim under the malfunction doctrine is not resolved by *Metropolitan Property & Casualty Ins. Co*. Instead, I must examine the nature and purpose of the malfunction doctrine and its progeny in Connecticut.

Section 3 of the Restatement (Third) of Torts provides as follows: "It may be inferred that the harm sustained by the plaintiff was caused by a product defect existing at the time of sale or distribution, without proof of a specific defect, when the incident that harmed the plaintiff: (a) was of a kind that ordinarily occurs as a result of product defect; and (b) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution." Comment (a) to § 3 of the Restatement (Third) of Torts explains that "[t]his [s]ection traces its historical antecedents to the law of negligence, which has long recognized that an inference of negligence may be drawn in cases where the defendant's negligence is the best explanation for the cause of an accident, even if the plaintiff cannot explain the exact nature of the defendant's conduct. . . . As products liability law developed, cases arose in which an inference of product defect could be drawn from the incident in which a product caused [the] plaintiff's harm, without proof of the specific nature of the defect." (Citation omitted.)

"Evidence of product malfunction may constitute acceptable proof of a manufacturing defect. The malfunction theory in no way relieves the plaintiff of the burden of proving a defect, but the doctrine may be described as providing that a plaintiff need not establish that a specific defect caused an accident if circumstantial evidence permits an inference that the product, in one way or another, probably was defective. A plaintiff who identifies a specific defect is not relegated to the malfunction theory. A plaintiff need not elect between specific defect evidence and the malfunction theory, but may proceed on alternative theories of specific defect and malfunction." (Footnotes omitted.) 2A American Law of Products Liability, supra, § 31:23, pp. 31–32. "The user's testimony of the circumstances of the accident is a generally accepted method of proving a manufacturing defect. A strict liability claimant may demonstrate an unsafe defect through direct eyewitness observation of a product malfunction, and need not adduce expert testimony to overcome a motion for summary judgment." (Footnote omitted.) Id., § 31:24, p. 33.

Comment (b) to § 3 of the Restatement (Third) of Torts further explains as follows: "Although the rules in this [s]ection . . . most often apply to manufacturing defects, occasionally a product design causes the product to malfunction in a manner identical to that which would ordinarily be caused by a manufacturing defect. Thus, an aircraft may inadvertently be designed in such a way that, in new condition and while flying within its intended performance parameters, the wings suddenly and unexpectedly fall off, causing harm. In theory, of course, the plaintiff in such a case would be able to show how other units in the same production line were designed, leading to a showing of a reasonable

alternative design . . . . As a practical matter, how-ever, when the incident involving the aircraft is one that ordinarily occurs as a result of product defect, and evidence in the particular case establishes that the harm was not solely the result of causes other than product defect existing at time of sale, it should not be necessary for the plaintiff to incur the cost of proving whether the failure resulted from a manufacturing defect or from a defect in the design of the product. Section 3 allows the trier of fact to draw the inference that the product was defective whether due to a manufacturing defect or a design defect. Under those circumstances, the plaintiff need not specify the type of defect responsible for the product malfunction."

Indeed, this court has also specifically rejected the strict requirement that a plaintiff need always show a reasonable alternative design, stating as follows: "In our view, the feasible alternative design requirement imposes an undue burden on plaintiffs that might pre-clude otherwise valid claims from jury consideration. Such a rule would require plaintiffs to retain an expert witness even in cases in which lay jurors can infer a design defect from circumstantial evidence. Connecti-cut courts . . . have consistently stated that a jury may, under appropriate circumstances, infer a defect from the evidence without the necessity of expert testi-mony. See, e.g., *Standard Structural Steel Co.* v. *Bethle-hem Steel Corp.*, [supra, 597 F. Supp. 183] (recognizing Connecticut law permits fact finder to draw inference of defect from circumstantial evidence); *Living & Learning Centre, Inc.* v. *Griese Custom Signs, Inc.*, [supra, 3 Conn. App. 664] ('It is not necessary that the plaintiff in a strict tort action establish a specific defect as long as there is evidence of some unspecified danger-ous condition. In the absence of other identifiable causes, evidence of malfunction is sufficient evidence of a defect under § 402A of the Second Restatement of Torts.'); *Kileen* v. *General Motors Corp.*, [supra, 36 Conn. Supp. 349] ('[t]he fact finder can find, where other identifiable causes are absent, that the mere evidence of a malfunction is sufficient evidence of a defect'); see also annot., 65 A.L.R.4th [supra, pp. 354–58] (listing twenty-eight states that allow establishment of prima facie case of design defect based upon inferences from circumstantial evidence)." (Footnote omitted.) *Potter* v. *Chicago Pneumatic Tool Co.*, supra, 241 Conn. 217–18.

Illustration (3) to § 3 of the Restatement (Third) of Torts is also particularly instructive: "Mary purchased a new automobile. She drove the car [1000] miles without incident. One day she stopped the car at a red light and leaned back to rest until the light changed. Suddenly the seat collapsed backward, causing Mary to hit the accelerator and the car to shoot out into oncoming traffic and collide with another car. Mary suffered harm in the ensuing collision. As a result of the collision, Mary's car was set afire, destroying the seat assembly.

The incident resulting in the harm is of a kind that ordinarily occurs as a result of product defect. Mary need not establish whether the seat assembly contained a manufacturing defect or a design defect."

As the foregoing demonstrates, the malfunction doctrine is "limited to situations in which a product fails to perform its manifestly intended function, thus supporting the conclusion that a defect of some kind is the most probable explanation." Restatement (Third), supra, § 3, comment (b), p. 112. In those situations, the malfunction doctrine has been developed to allow a jury to infer a defect from the evidence without the necessity of expert testimony. *Potter* v. *Chicago Pneumatic Tool Co.*, supra, 241 Conn. 218. Nothing in the development of the malfunction doctrine in this state requires that the product itself or an exemplar be unavailable in order to invoke the doctrine. Instead, a plaintiff is allowed to invoke the doctrine when "the defendant's negligence is the best explanation for the cause of an accident, even if the plaintiff cannot explain the exact nature of the defendant's conduct." Restatement (Third), supra, § 3, comment (a), p. 111. Accordingly, I conclude that the malfunction doctrine was available to the plaintiff in the present case, despite the ability to examine the plaintiff's vehicle and an exemplar.

The plaintiff claims that he satisfied the requirements for establishing a prima facie case of product liability under the malfunction doctrine through circumstantial evidence. Specifically, the plaintiff asserts that he established his claim under the malfunction doctrine through sufficient circumstantial evidence to meet the requirements set forth in *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.*, supra, 302 Conn. 140–41. The defendants disagree and assert that the plaintiff's evidence did not satisfy those requirements. I agree with the plaintiff.

As I have explained previously in this opinion, in *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.*, supra, 302 Conn. 139–40, this court concluded that in order for a jury to "rely on circumstantial evidence to infer that a product that malfunctioned was defective at the time it left the manufacturer's or seller's control if the plaintiff presents evidence establishing that (1) the incident that caused the plaintiff's harm was of a kind that ordinarily does not occur in the absence of a product defect, and (2) any defect most likely existed at the time the product left the manufacturer's or seller's control and was not the result of other reasonably possible causes not attributable to the manufacturer or seller." We further explained that a plaintiff may establish these elements of a claim under the malfunction doctrine through circumstantial evidence including: "(1) the history and use of the particular product, (2) the manner in which the product malfunctioned, (3)

similar malfunctions in similar products that may negate the possibility of other causes, (4) the age of the product in relation to its life expectancy, and (5) the most likely causes of the malfunction." Id., 141.

In the present case, the plaintiff introduced circumstantial evidence regarding the history and age of the vehicle. He established that the vehicle was a brand new Mazda3 that he had purchased approximately one month before the incident. He further demonstrated that on the date of the incident, the vehicle's odometer registered less than 3000 miles and that he had used the vehicle primarily for his commute to work. The plaintiff also established that the vehicle had not been serviced, repaired or altered during the time that the plaintiff owned the vehicle. The plaintiff further established that no maintenance or repairs were scheduled for the vehicle and that no one had tampered with or opened the hood of the vehicle during the one month period he owned the vehicle.

The plaintiff also introduced circumstantial evidence regarding the manner in which the vehicle malfunctioned. Specifically, the plaintiff testified that, on the date of the incident, he was operating the vehicle in the regular manner he had been operating it since its purchase. The plaintiff explained that immediately prior to the incident, he was driving the vehicle under normal conditions during his commute to work. The plaintiff further established that as he was driving on the morning of the incident, he smelled a strong odor of gasoline and immediately pulled over. The plaintiff explained that after pulling over, he opened the hood of the vehicle to investigate and that, upon opening the hood of the vehicle, the engine caught fire and exploded. The plaintiff's testimony established that the engine did not suffer any external impact from another vehicle.

As comment (d) to § 3 of the Restatement (Third) of Torts provides: "To allow the trier of fact to conclude that a product defect caused the plaintiff's harm under this [s]ection, the plaintiff must establish by a preponderance of the evidence that the incident was not solely the result of causal factors other than defect at time of sale. The defect need not be the only cause of the incident; if the plaintiff can prove that the most likely explanation of the harm involves the causal contribution of a product defect, the fact that there may be other concurrent causes of the harm does not preclude liability under this [s]ection. But when the harmful incident can be attributed solely to causes other than original defect, including the conduct of others, an inference of defect under this [s]ection cannot be drawn."

Comment (d) further provides: "Evidence may permit the inference that a defect in the product at the time of the harm-causing incident caused the product to malfunction, but not the inference that the defect existed at the time of sale or distribution. Such factors

as the age of the product, possible alteration by repairers or others, and misuse by the plaintiff or third parties may have introduced the defect that causes harm." Restatement (Third), supra, § 3, comment (d), p. 114.

In the present case, the plaintiff established that a brand new vehicle that he purchased from a dealer ignited in flames approximately one month after purchase, having had no service or maintenance performed on the vehicle, and while operating the vehicle under normal circumstances. On the basis of the foregoing, I would conclude that the plaintiff established sufficient circumstantial evidence to create a genuine issue of material fact under the malfunction doctrine of product liability. Accordingly, I would conclude that the Appellate Court improperly affirmed the trial court's award of summary judgment in favor of the defendants. Therefore, I would reverse the judgment of the Appellate Court and remand the matter to that court with instructions to reverse the judgment of the trial court and remand the matter for further proceedings. Accordingly, I respectfully dissent.

[1] The majority seems to claim that the plaintiff failed to raise his claim under the malfunction doctrine because he asserted a claim as to a specific defect with the fuel line. I disagree that the majority's assertion of a claim as to a specific defect has any impact on whether he also asserted a claim under the malfunction doctrine. "A plaintiff need not elect between specific defect evidence and the malfunction theory, but may proceed on alternative theories of specific defect and malfunction." 2A American Law of Products Liability, supra, § 31:23, p. 32.

[2] Indeed, at oral argument before this court, the defendants' counsel acknowledged that the plaintiff's claim regarding the use of circumstantial evidence could not have been understood to raise any other theory of products liability other than the malfunction doctrine.

[3] The majority notes that the plaintiff did not move for an articulation despite the absence of any mention from the trial court of his supposed alternative theory. "Tellingly, the plaintiff did not move for an articulation despite the absence of any mention of his supposed alternative theory by the trial court. One would expect that, if the plaintiff truly believed that he raised his malfunction theory claim in the trial court, he would have been surprised when the trial court ignored this theory in its memorandum of decision, which, in turn, would have prompted him to move for an articulation. His silence in this regard speaks volumes."

First, as discussed more fully in this opinion, the trial court did rule on the plaintiff's malfunction doctrine claim and determined that expert evidence is required for a products liability claim involving a design defect. Second, the majority's claim is contrary to Practice Book § 61-10 (b), which provides as follows: "The failure of any party on appeal to seek articulation pursuant to Section 66-5 shall not be the sole ground upon which the court declines to review any issue or claim on appeal. If the court determines that articulation of the trial court decision is appropriate, it may remand the case pursuant to Section 60-5 for articulation by the trial court within a specified time period. After remand to the trial court for articulation, the trial court may, in its discretion, require assistance from the parties in order to provide the articulation. Such assistance may include, but is not limited to, supplemental briefs, oral argument and provision of copies of transcripts and exhibits." As the commentary to § 61-10 provides: "Subsection (b) was adopted to effect a change in appellate procedure by limiting the use of the forfeiture sanction imposed when an appellant fails to seek an articulation from the trial court pursuant to Section 66-5 with regard to an issue on appeal, and the court therefore declines to review the issue for lack of an adequate record for review. In lieu of refusing to review the issue, when the court determines that articulation is appropriate, the court may now remand the case to the trial court for an articulation and then address the merits of the issue after articulation is provided. The adoption of subsection (b) is not intended to preclude the court from declining to review an issue

where the record is inadequate for reasons other than solely the failure to seek an articulation, such as, for example, the failure to procure the trial court's decision pursuant to Section 64-1 (b) or the failure to provide a transcript, exhibits or other documents necessary for appellate review." Practice Book § 61-10, commentary. Accordingly, I disagree with the majority's reliance on the plaintiff's failure to seek an articulation as a ground for not reviewing its claim involving the malfunction doctrine.

———————————————